## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Robert T. Hinds,

     Plaintiff,       Case Number: 26-11718
                 Honorable F. Kay Behm

v.

Ora Carter, et al.,

     Defendants.

                  /

## <u>OPINION AND ORDER DISMISSING DEFENDANT RICHARDSON</u>

Plaintiff Robert T. Hinds, a state prisoner currently confined at the G. Robert Cotton Correctional Facility (SLF) in Jackson, Michigan, has filed this pro se civil-rights action under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.)  The Court granted him leave to proceed *in forma pauperis*.[1] (ECF No. 3.) He sues the following Michigan Department of Corrections ("MDOC") employees: Assistant Deputy Warden (ADW) Ora Carter, ADW Richardson, Special Activities Director (SAD) Nicole Baier, Chaplain Blair, and Resident Unit Manager (RUM) Conner.  He sues

---

[1] Hinds twice submitted checks to the Clerk's Office in the amount of $ 350.00.  Because Hinds has been granted leave to proceed without prepayment of the filing fee, both checks were returned to him.  (*See* June 12, 2026 and July 17, 2026 Docket Entries.) Hinds is advised that he should not submit any additional checks.  Pursuant to the Court's order granting *in forma pauperis* status and 28 U.S.C. § 1915(b)(2), Hinds will pay the filing fee in installments forwarded by his custodian from his prison account.

the Defendants in their individual and official capacities, and he seeks prospective injunctive relief, monetary damages, and other appropriate relief

Having reviewed Hinds' Complaint, and for the reasons explained below, the Court dismisses Hinds' claims against Defendant Richardson pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983.  The Court also dismisses Hinds' claims for monetary damages against the Defendants in their official capacities.  The Court will allow Hinds' claim that the remaining Defendants retaliated against him for engaging in protected conduct in violation of the First Amendment to proceed.

## I.

Hinds' claims arise from events that occurred while he was incarcerated at the Thumb Correctional Facility (TCF) in Lapeer, between June 2024 and April 2025.  He alleges that prison officials retaliated against him for proposing inmate organizations, criticizing prison programming, and filing grievances by removing him from programs and ultimately transferring him to another correctional facility.

In June 2024, Hinds joined the Prisoner Fellowship program and served as a clerk. (ECF No. 1, PageID.17.) Program participants were told that a transfer hold would be placed on them and that they would not be transferred from TCF unless they committed a Class I misconduct, posed a threat to the facility, presented safety concerns, or other program needs justified transfer. (*Id.*). According to Hinds,

2

ADWs Ora Carter and Richardson were responsible for placing and removing these holds. (*Id.*).

In January 2025, Hinds submitted proposals to establish chapters of the National Lifers of America (NLA) and the NAACP to Defendant Baier and provided copies to Defendant Carter. (*Id.* at 18). At the same time, he submitted five proposals to bring professional guest speakers to TCF through those organizations once approved. (*Id.* at PageID.18.) On February 10, 2025, Carter issued a memorandum advising Hinds that the requests to establish the NLA and NAACP chapters, as well as the guest speaker requests, had to be presented through the Warden's Forum Special Activities Committee. (*Id.* at PageID.19.) Hinds responded the same day, asserting that he had followed applicable MDOC policy directives and TCF operating procedures. (*Id.*)

On February 11, 2025, Hinds filed a grievance against Defendants Baier and Carter, alleging they had violated MDOC and TCF policies. (*Id.* at PageID.20.) The following day, Defendant Conner reviewed the grievance and allegedly told Hinds that TCF had not had NLA or NAACP chapters for many years because the administration did not want those organizations at the facility. (*Id.*) Conner further stated that inmates who attempted to establish those organizations, or filed grievances related to them, were often transferred. (*Id.*)

3

Although the grievance response directed Hinds to resubmit his proposals to Baier, the five guest-speaker proposals were again denied because the sponsoring organizations had not yet been approved. (*Id.* at PageID.20-21.)

On February 12, 2025, Conner allegedly directed a subordinate to prepare a transfer screening for Hinds, and Carter approved the transfer. (*Id.* at PageID.21.) (*Id.* at PageID.20-21.)

On February 19, 2025, Hinds submitted a written complaint to Defendant Carter concerning Baier's handling of the program proposals. (*Id.*)

In late March 2025, another prisoner informed Hinds that Baier had stated that Hinds had already been submitted for transfer because he would not stop pursuing approval of the NLA group. (*Id.* at PageID.21-22.)

In January 2025, Hinds was appointed to the Prisoner Benefit Fund (PBF) Committee, a four-member committee consisting of two inmates and two staff members that approves expenditures benefiting the general prison population and charitable donations. (*Id.* at PageID.23.) Between January and March 2025, Chaplain Blair requested that the PBF donate funds to Keryx, a Christian organization that conducts semiannual revival-style events. (*Id.* at PageID.25.) Hinds presented the funding request to the Warden's Forum, which voted to deny it based on concerns regarding Blair's management of the funds and planning process. (*Id.*) On March 14, 2025, Hinds raised those concerns with Blair's

4

supervisor, Defendant Carter.  (*Id.* at PageID.27.)  The following day, the inmate serving as Keryx Rector allegedly warned Hinds that Blair would remove him from the Keryx Weekend if he did not approve the funding request. (*Id.*) On March 23, 2025, Blair informed Hinds that he had been removed from the Keryx Weekend committee, and Hinds filed a grievance alleging that the removal was retaliatory.  (*Id.* at PageID.27-28.)

On April 3, 2025, Blair told Hinds that Richardson had instructed her to restore him to the Keryx Weekend. Blair allegedly also stated that he and Baier were "sick of" Hinds, intended to "ride[] him out," and that he would not be at TCF for the Keryx Weekend because the Prisoner Fellowship hold preventing his transfer had been removed. (*Id.*) Hinds alleges that only Carter and/or Richardson had authority to remove that hold. (*Id.*)

On April 7, 2025, Richardson interviewed Hinds regarding his grievance against Blair and confirmed that he had directed Blair to restore Hinds to the Keryx Weekend. (*Id.*)  Hinds then told Richardson that Blair had said she and Baier were tired of him, had arranged for the removal of his transfer hold, and that he would soon be transferred.  (*Id.* at PageID.29.) Richardson responded that he would investigate. (*Id.*)

A few hours later, Hinds was instructed to pack his belongings because he was being transferred. (*Id.*) Hinds later encountered Richardson, who allegedly told

him that he did not agree with what was happening. (*Id.* at PageID.29-30.) Hinds

contends that Richardson nevertheless failed to prevent the retaliatory actions of

his subordinates. (*Id.* at PageID.30.)

On April 8, 2025, Hinds was transferred to G. Robert Cotton Correctional

Facility (JCF). (*Id.*) After his arrival, Baier allegedly contacted JCF Special

Activities Director Ann Alcorta and characterized Hinds as an "agitator," which

Hinds alleges was done in retaliation for grievances filed and interfered with his

ability to participate in prison programs and organizations. (*Id.*)

Hinds alleges that Defendants retaliated against him for filing grievances

and advocating for inmate programming by denying his proposals, removing him

from prison programs, removing his transfer hold, transferring him to another

facility, and characterizing him as an "agitator" after his transfer.  He asserts a First

Amendment retaliation claim against all Defendants.

## II.

Because Hinds is proceeding *in forma pauperis*, the Court must review the

complaint under 28 U.S.C. § 1915(e). *McGore v. Wrigglesworth*, 114 F.3d 601,

608-609 (6th Cir. 1997). On review, a district court must dismiss a case at any time

if the action is frivolous or malicious, fails to state a claim upon which relief may

be granted, or seeks monetary relief from a defendant who is immune from such

relief. 28 U.S.C. § 1915(e)(2)(B). A complaint may be dismissed as frivolous

"where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if, viewing the facts in the light most favorable to plaintiff, it is clear "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

### III.

### A.

Hinds' claims against Defendant Richardson will be dismissed because he fails to allege facts demonstrating Richardson's personal involvement in the alleged retaliatory conduct.

Retaliation based upon a prisoner's exercise of constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to state a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* The plaintiff also must show that the protected conduct was a substantial or motivating factor behind the defendant's actions. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

Although Hinds alleges that Richardson, along with Carter, had authority to place and remove transfer holds, he does not allege facts showing that Richardson actually removed Hinds' transfer hold or otherwise participated in the decision to transfer him. To the contrary, the complaint alleges that Richardson directed Chaplain Blair to reinstate Hinds to the Keryx Weekend, told Hinds he would investigate Blair's alleged threat to have him transferred, and later stated that he did not agree with the transfer. Hinds nevertheless contends that Richardson is liable because he failed to prevent the retaliatory actions of his subordinates.

These allegations are insufficient to state a claim. Section 1983 liability cannot be based on a defendant's supervisory position or a failure to act. Rather, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Likewise, to establish supervisory liability, "at a minimum," a plaintiff must show that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)). Hinds alleges no facts supporting a reasonable inference that Richardson authorized, approved, or knowingly acquiesced in the alleged retaliatory transfer. Instead, the complaint affirmatively alleges that Richardson opposed the transfer. These

8

allegations are insufficient to state a First Amendment retaliation claim against Richardson.

### B.

Hinds' claims for monetary damages against the Defendants in their official capacities will be dismissed because the Eleventh Amendment "bars suits for monetary relief against state officials sued in their official capacity." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993).

### IV.

For the reasons explained above, the Court concludes that Hinds fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983 as to his claims against Defendant Richardson.  Accordingly, Defendant Richardson is **DISMISSED**.  Hinds's claims for monetary damages against the Defendants in their official capacities are **DISMISSED**.

Hinds' remaining claims survive the Court's initial screening process under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A.

**SO ORDERED**.

Date: July 20, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge

9